**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **ED CV 26-719-JFW(AS)** | Date: February 26, 2026 |
| Title: | Manoj Kumar -v- Mark Bowen, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):** ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [filed 2/16/26; Docket No. 3]

On February 16, 2026, Petitioner Manoj Kumar ("Petitioner") filed a Motion for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction ("Motion"). On February 19, 2026, Respondents Mark Bowen, Todd Lyons, Kristi Noem, and Pamela Bondi (collectively, "Respondents") filed their Opposition. Petitioner did not file a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for March 2, 2026 is hereby vacated and the matter taken off calendar. After considering the moving and opposing papers, and the arguments therein, the Court rules as follows:

I.    **Factual and Procedural Background**

   **A. Factual Background**

Petitioner, who is a native and citizen of India, entered the United States without inspection on September 28, 2024, and was arrested by United States Border Patrol ("USBP") near Lukeville, Arizona. Petitioner did not claim fear of returning to India. Petitioner was then transported to Tucson Soft-Sided Facility in Tucson, Arizona for further processing. On September 29, 2024, USBP served Petitioner with a Notice and Order of Expedited Removal (Form I-860), pursuant to Section 212(a)(7)(A)(i) (I) of the Immigration and Nationality Act ("INA"), as an immigrant without an immigration visa, and with a Notice to Alien Ordered Removed/Departure Verification (Form I-296).

On October 4, 2024, USBP transferred Petitioner to Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") New Orleans at the Adams County Detention Center in Oakdale, Louisiana. On November 2, 2024, Petitioner was transferred to the Jackson Parish Correctional Center in Winnfield, Louisiana.

On November 7, 2024, Petitioner claimed for the first time since he entered the United States a fear of returning to India, As a result, Petitioner's case was referred to the United States Citizenship and Immigration Services ("USCIS") pending a credible fear interview with an asylum officer. On November 15, 2024, an asylum officer interviewed Petitioner. On November 22, 2024, the asylum officer determined that Petitioner had established a credible fear of persecution or torture. USCIS served Petitioner with a Notice to Appear (Form I-862) pursuant to Section 212(a)(6)(A)(i) of the INA, "[a]n alien present in the United States without being admitted or paroled" and Section 212(a)(7)(A)(i)(I) of the INA, an immigrant without an immigrant visa.

On November 30, 2024, ERO New Orleans conducted a case review and determined that Petitioner was subject to interim parole. On December 6, 2024, Petitioner was released on interim parole and instructed to report in person to the nearest ICE ERO office. On December 12, 2024, Petitioner reported in person to ERO San Bernardino, and Petitioner was ordered to report every six months.

On March 12, 2025, Petitioner filed an Application for asylum and for withholding of removal. On March 25, 2025, an Immigration Judge in Santa Ana, California, issued a ruling of Failure to Prosecute the November 22, 2024 Notice to Appear.

On June 10, 2025, Petitioner appeared for a scheduled ICE check-in appointment at ERO San Bernadino and during that appointment, ICE officers re-detained Petitioner. At the time, the ICE officers did not indicate that Petitioner had violated any of the conditions of his release, had been involved in any criminal conduct, or that there were any changed circumstances justifying custody. According to Petitioner, he was placed on the Alternatives to Detention ("ATD") program at the time of his release from custody in December 2024, he was fully compliant with all the conditions of release, including ATD requirements and ICE check-ins. Petitioner does not have any criminal convictions. According to Petitioner, he has one prior arrest for driving under the influence, which did not result in a conviction. Petitioner also claims that his removal proceedings remain pending and no final order of removal has been entered.

Following his re-detention, Petitioner sought a bond hearing. On June 23, 2025, his counsel withdrew the request for a bond hearing because of a jurisdictional dispute. On August 14, 2025, an Immigration Judge denied Petitioner bond on jurisdictional grounds, concluding that Petitioner was not eligible for bond due to the Government's position that he was detained under 8 U.S.C. § 1225(b). According to Respondents, on December 22, 2025, Petitioner received a bond hearing before an Immigration Judge pursuant to *Rodriguez v. Holder*, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2023), *aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d 1060, 1086 (9th Cir. 2015), *rev'd sub no. Jennings v. Rodriguez*, 138 S.Ct. 830 (2018). At the hearing, the Immigration Judge denied Petitioner's request for bond. Specifically, the Immigration Judge concluded that:

> The Court considered the applicant's request for bond. However, DHS met its
> burden to establish by clear and convincing evidence that the applicant's release

would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate.

**B.     Procedural History**

On February 16, 2026, Petitioner filed his Petition against Respondents, alleging claims for: (1) violation of Petitioner's Fifth Amendment right to due process; (2) violation of Petitioner's procedural due process rights; and (3) violation of the INA.

**II.     Legal Standard**

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

The Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions maintain the status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (*quoting Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'" *Id.* (*quoting Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (*quoting Marlyn Nutraceuticals, Inc*., 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp*., 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

### III.    Discussion

In his Motion, Petitioner seeks an order from this Court requiring Respondents to release Petitioner from custody immediately or, in the alternative, requiring Respondents to provide an individualized bond hearing before an Immigration Judge within a fixed time period.  Petitioner also requests that the Court set an Order to Show Cause as to why a preliminary injunction should not issue.

In this case, the Court concludes that Petitioner has not met his burden to establish that he is likely to succeed on the merits, or to show serious questions going to the merits, of his claims.  *Winter*, 555 U.S. at 22.  In his Application, Petitioner argues that Respondents are erroneously asserting that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), when Petitioner's re-detention is governed by 8 U.S.C. § 1226(a), which provides for discretionary detention and access to an individualized bond hearing before an immigration judge.  However, it is undisputed that Petitioner was provided with an individualized bond hearing before an immigration judge on December 22, 2025 – eight weeks before Petitioner filed his Motion – where the Immigration Judge determined that Respondents had "establish[ed] by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate."  Because Petitioner failed to discuss, or even mention, the December 22, 2025 bond hearing in his Motion and failed to file a Reply, despite being provided with an opportunity to do so[1], Petitioner has failed to provide the Court with any factual or legal basis as to why the provided bond hearing was insufficient.  In addition, although Petitioner argues that immediate release, and not merely a bond hearing is the proper remedy, Petitioner's argument is based on Petitioner's position that Respondents had "already determined that [they] will not provide a bond hearing unless and until" the issue of whether Petitioner was eligible for a bond hearing under Section 1225(b) of the INA was resolved.  However, as discussed above, Petitioner has, in fact, been given a bond hearing and Petitioner has failed to provide the Court with any factual or legal basis as to why that bond hearing was insufficient.

Although Petitioner may provide additional evidence or legal authority at a later stage of this litigation to support his request to be released from ICE detention, the Court concludes that Petitioner has failed to provide the Court with factual and legal authority to support his request at this time.  Because Petitioner has not met his burden of establishing a likelihood of success, or raised serious questions going to the merits, on his claims, and, as a result, his Application must be denied.  *See Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements") (citation modified).

### IV.    Conclusion

---

[1] In the Court's Order Setting Briefing Schedule on Petitioner's Motion for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, the Court set February 23, 2026, at 12:00 p.m., as the deadline for Petitioner to file a Reply.  Petitioner failed to file a timely Reply and, as of the date of this Order, still has not filed a Reply.

For all the foregoing reasons, Petitioner's Motion, including Petitioner's request that the Court set an Order to Show Cause as to why a preliminary injunction should not be issued, is **DENIED**.  To the extent that Petitioner contends he is entitled to additional relief, he may seek such relief through his Petition  pending before the Magistrate Judge.

IT IS SO ORDERED.